IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SEYFARTH SHAW, LLP<br>975 F Street, N.W.<br>Washington, DC  20004-1454,<br><br>   Plaintiff,<br><br>v.<br><br>MR. EDWARD BRANTLEY<br>5501 Thornton Road<br>Raleigh, NC  27616-5727,<br><br>   and<br><br>MR. ROLAND NORRIS, II<br>822 South White Street, Suite 104<br>Wake Forest, NC  27587-2961,<br><br>   Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**VERIFIED COMPLAINT**

Now comes the Plaintiff, SEYFARTH SHAW, LLP, a Limited Liability Partnership (hereinafter sometimes referred to as "SSLP"), states as follows for its verified Complaint against Defendant:

**Count I**

**(Breach of Contract**

1. Jurisdiction of the court is founded in 28 U.S.C. § 1332.

2. Plaintiff SEYFARTH SHAW LLP is a limited liability partnership composed of attorneys at law some of who are licensed to practice law in the District of Columbia and in various other jurisdictions, and none of whom reside in nor are citizens of North Carolina.

DC1 30250687.1

3.  Edward Brantley and Roland Norris, II are citizens of North Carolina who retained Plaintiff in the District of Columbia to assist Defendants in legal matters.

4.  On or about July 21, 2008, in the District of Columbia, Defendants retained and employed Plaintiff to provide legal services and representation to Defendants (Exhibit A). The Defendants agreed to pay Plaintiff by the hour for the legal services rendered, according to the hourly rates for the attorneys employed by Plaintiff in effect at the time said services were rendered, as well as out-of-pocket expenses incurred by Plaintiff in providing said legal services. Defendants also implicitly agreed to pay all bills within 30 days and agreed to pay the costs of collecting the debt, including court costs, filing fees, and a reasonable lawyer's fee.

5.  Plaintiff fully performed said agreement and rendered said legal services to Defendants.

6.  In breach of said agreement, Defendants have failed and refused to pay Plaintiff for said legal services and is justly indebted to Plaintiff in the amount of $214,889.00, plus interest from January 1, 2009.

7.  Plaintiff's request attorney fees of 33 1/3% of the outstanding balance as reasonable attorney fees, or such other amount as the court shall set.

WHEREFORE, Plaintiff demands judgment against the Defendants in the amount of $214,889.00 together with interest of $1,000.00, and attorney fees of $71,622.50 and costs.

## Count II

### (Quantum Meruit)

8.  The foregoing allegations in paragraph 1 through 7 herein are incorporated by reference.

9.  Plaintiff rendered valuable legal services to Defendants with the intention of receiving from Defendants payment of Plaintiff's fees for said services, according to the hourly

rates for attorneys employed by Plaintiff, and out-of-pocket expenses incurred by plaintiff, in providing said service to defendant. Defendants accepted said services, received the benefit of said services, and knew that Plaintiff expected to be paid for said services, according to its firm's hourly rates, and reimbursed for said expenses. All said legal services were rendered and expenses incurred under such circumstances that Defendants knew Plaintiff expected to be paid for them.

10. Plaintiff has requested Defendants to pay Plaintiff for said legal services and out-of-pocket expenses, and notwithstanding said requests, Defendants have failed and refused to do so and is justly indebted to Plaintiff in the amount of $214,889.00, plus interest of $1,000.00.

WHEREFORE, Plaintiff demands judgment against the Defendants in the amount of $287,511.50 plus all court costs, and such other relief as the court shall order.

SEYFARTH SHAW LLP
a Limited Liability Partnership

By _____
Lawrence P. Postol, Bar No. 239277
975 F Street, N.W.
Washington, DC  20004-14544
202-828-5385

Attorneys for Plaintiff

DATED:  June 26, 2009

District of Columbia ss:

    Michael B. Hubbard, being first duly sworn on oath says that he is a partner in the plaintiff's law firm in this action, authorized to make this verification on the plaintiff's behalf, and that the foregoing is a just and true statement of the amount owned by Defendant to Plaintiff, exclusive of all set-offs and just grounds of defense.

_____
Michael B. Hubbard

    Subscribed and sworn to before me this 26th day of June, 2009.

_____
Notary Public

**Vanessa S. Hayward**
**Notary Public, District of Columbia**
**My Commission Expires 10/31/2012**

DC1 30250687.1

# SEYFARTH
## ATTORNEYS SHAW LLP

815 Connecticut Avenue, N.W.
Suite 500
Washington, D.C. 20006-4004
(202) 463-2400
fax (202) 828-5393
www.seyfarth.com

Writer's direct phone
(202) 828-5360

Writer's e-mail
EStern@seyfarth.com

Writer's direct fax
(202) 641-9260

July 21, 2008

Mr. Edward Brantley
5501 Thornton Road
Raleigh, North Carolina 27616-5727

Mr. Roland Norris, II
822 South White Street, Suite 104
Wake Forest, North Carolina 27587-2961

Re:   Engagement Letter

Dear Edward and Rusty:

    Thank you for retaining Seyfarth Shaw LLP to represent you. The scope of our engagement will be to represent you both with respect to filing a complaint against Jack Williams, President of F&N Construction, Inc. and BTU Sales, Inc., seeking a temporary restraining order and permanent injunction against any sale of F&N Construction stock still held by Jack Williams pursuant to an Agreement for the Purchase and Sale of Shares of F&N Construction, Inc. and BTU Sales, Inc. and a Second Stock Pledge Agreement, and such other matters as you may request and we agree to handle. Naturally, the scope of our representation may be limited or expanded from time to time. We look forward to working with you in this engagement and to developing a mutually satisfactory relationship.

    The purpose of this engagement letter is to confirm our engagement as your counsel and to provide you both with certain information concerning our fees, billing and collection policies and other terms that will govern our relationship and to discuss such important conflict of interest issues as may be suggested by our relationship or the nature or scope of our engagement. Although we do not wish to be overly formal in our relationship with you both, we have found it to be a helpful practice to confirm with our clients in writing the nature and terms of our representation. Attached to this letter are our Firm's standard Terms of Engagement, which will govern our relationship except as specifically stated otherwise in this engagement letter. Please review these terms and let me know if you have any questions about them.

    Our fee for this engagement will be based upon the hourly billing rates in effect at the time of service. My rate is $560.00/hour and the rate of Rhett Petcher is $305.00/hour . We may use

BRUSSELS · WASHINGTON, D.C. · SAN FRANCISCO · SACRAMENTO · NEW YORK · LOS ANGELES · HOUSTON · CHICAGO · BOSTON · ATLANTA

DC1 30234852.1

Exhibit A



**SEYFARTH SHAW LLP**
ATTORNEYS

Edward Brantley and Roland Norris
July 21, 2008
Page 2

other attorneys and paralegals in our firm to assist with your corporate matter whose rates range from $120.00/hour to $665.00/hour. We record our time in units of one-tenth of an hour.

This will confirm that you have agreed to provide us with a retainer for legal services and out-of-pocket expenses and disbursements incurred in connection with the matter in the amount of $15,000.00. The retainer will be held in an interest bearing account and will be applied towards our invoices as issued. We reserve the right to apply any portion of the retainer to satisfy outstanding amounts due to the Firm, and to discontinue our representation until you provide us with funds to restore the retainer. Our firm requires that a W-9 form be submitted with each retainer. Please return the enclosed W-9 form, retainer check and signed engagement letter to me as soon as possible.

You are aware that the Firm represents many other companies and individuals. It is possible that during the time we are representing you both, some of our present or future clients have or will have disputes or transactions with you both. You both agree that we may continue to represent or may undertake in the future to represent existing or new clients in any matter that is not substantially related to our work for you even if the interests of such clients in those other matters are directly adverse to you and/or your affiliates, including, for example, representing adverse parties in litigation. We agree, however, that your prospective consent to conflicting representation contained in the preceding sentence shall not apply in the instance of any matter where, as a result of our representation of you both, we have obtained proprietary or other confidential information of a nonpublic nature, that, if known to such other client, could be used in such other matter to your material disadvantage.

If the terms described above and in the Terms of Engagement are satisfactory, please so indicate by signing in the space provided below and please return the signed copy to me at your earliest convenience. We look forward to working with you.

Sincerely,

SEYFARTH SHAW LLP

Ernest M. Stern

EMS/vsh
Attachment

**Agreed:**

By: _____          By: _____
    Edward Brantley                              Roland Norris, II

Date: _____        Date: 7/21/08

DC1 30234852.1

# SEYFARTH SHAW LLP
ATTORNEYS

Edward Brantley and Roland Norris
July 21, 2008
Page 2

other attorneys and paralegals in our firm to assist with your corporate matter whose rates range from $120.00/hour to $665.00/hour. We record our time in units of one-tenth of an hour.

This will confirm that you have agreed to provide us with a retainer for legal services and out-of-pocket expenses and disbursements incurred in connection with the matter in the amount of $15,000.00. The retainer will be held in an interest bearing account and will be applied towards our invoices as issued. We reserve the right to apply any portion of the retainer to satisfy outstanding amounts due to the Firm, and to discontinue our representation until you provide us with funds to restore the retainer. Our firm requires that a W-9 form be submitted with each retainer. Please return the enclosed W-9 form, retainer check and signed engagement letter to me as soon as possible.

You are aware that the Firm represents many other companies and individuals. It is possible that during the time we are representing you both, some of our present or future clients have or will have disputes or transactions with you both. You both agree that we may continue to represent or may undertake in the future to represent existing or new clients in any matter that is not substantially related to our work for you even if the interests of such clients in those other matters are directly adverse to you and/or your affiliates, including, for example, representing adverse parties in litigation. We agree, however, that your prospective consent to conflicting representation contained in the preceding sentence shall not apply in the instance of any matter where, as a result of our representation of you both, we have obtained proprietary or other confidential information of a nonpublic nature, that, if known to such other client, could be used in such other matter to your material disadvantage.

If the terms described above and in the Terms of Engagement are satisfactory, please so indicate by signing in the space provided below and please return the signed copy to me at your earliest convenience. We look forward to working with you.

Sincerely,

SEYFARTH SHAW LLP

Ernest M. Stern

EMS/vsh
Attachment

**Agreed:**

By: _____  By: _____
Edward Brantley            Roland Norris, II

Date: 7/22/08              Date: _____

DC1 30234852.1

# STANDARD TERMS OF ENGAGEMENT FOR LEGAL SERVICES

This statement sets forth the standard terms of our engagement as your lawyers. Unless modified in writing by mutual agreement, these terms will be an integral part of our agreement with you. Therefore, we ask that you review this statement carefully and contact us promptly if you have any questions. We suggest that you retain this statement in your file.

## THE SCOPE OF OUR WORK

You should have a clear understanding of the legal services we will provide. Any questions that you have should be dealt with promptly.

We will at all times act on your behalf to the best of our ability. Any expressions on our part concerning the outcome of our legal matters are expressions of our best professional judgment, but are not guarantees. Such opinions are necessarily limited by our knowledge of the facts and are based on the state of the law at the time they are expressed.

It is our policy that the person or entity that we represent is the person or entity that is identified in our engagement letter and does not include any affiliates of such person or entity (*i.e.*, if you are a corporation or partnership, any parents, subsidiaries, employees, officers, directors, shareholders or partners of the corporation or partnership, or commonly owned corporations or partnerships; or, if you are a trade association, any members of the trade association). Accordingly, for conflict of interest purposes, we may represent another client with interests adverse to any such affiliate without obtaining your consent.

It is our further policy that our representation is limited to performance of the services described in the engagement letter and does not include representation of you or your interests in any other matter.

After completion of the matter, changes may occur in the applicable laws or regulations that could have an impact upon your future rights and liabilities. We always strive to keep our clients updated on matters on which we have been retained. However, unless you engage us after completion of the matter to provide additional advice on issues arising from the matter, the Firm has no continuing obligation to advise you with respect to future legal developments.

If, during the course of our engagement, we send you a letter or other written communication advising you about a Federal tax issue, you may notice a statement towards the end saying that our advice may not be relied upon for the purpose of avoiding penalties that may be imposed. (That legend will appear on every e-mail or fax that we send even if there is no tax issue involved.) This does not mean that we have not carefully considered the advice we sent to you but, rather, is intended to enable us to render that advice in a cost efficient manner. Rules recently adopted by the Treasury Department require that in the absence of such a legend, any tax advice must be given only in a full-blown, formal legal opinion. Like all law firms, if we were to issue a formal opinion, we would need to follow certain prescribed procedures. We believe that, in most cases, the cost to our clients if we were to follow those procedures would be totally disproportionate to the benefit they would receive. In any case where we think that a formal opinion may be appropriate, we will discuss the matter with you. Please be assured that we will give the same care and attention to any tax advice we give to you as we would have before the new Treasury Department rules, regardless of the form in which that advice is rendered.

## WHO WILL PROVIDE THE LEGAL SERVICES

Customarily, each client of the Firm is served by a principal lawyer contact. The principal lawyer should be someone in whom you have confidence and with whom you enjoy working. You are free to request a change of principal lawyer at any time. Subject to the supervisory role of the principal lawyer, your work or parts of it may be performed by other lawyers and legal assistants in the Firm. Such delegation may be for the purpose of involving lawyers or legal assistants with special expertise in a given area or for the purpose of providing services on the most efficient and timely basis. Whenever practicable, we will advise you of the names of those lawyers and legal assistants who work on your matters.

## HOW FEES WILL BE SET

The basis on which our fees will be determined is described in the accompanying engagement letter.

We will keep accurate records of the time we devote to your work, including conferences (both in person and over the telephone), negotiations, factual and legal research and analysis, document preparation and revision, travel on your behalf, and other related matters. We record our time in units of one quarter of an hour.

The hourly rates of our lawyers are adjusted annually to reflect current levels of legal experience, changes in overhead costs, and other factors. We are often requested to estimate the amount of fees and costs likely to be incurred in connection with a particular matter. Whenever possible, we will furnish such an estimate based upon our professional judgment, but always with a clear understanding that it is not a maximum or fixed-fee quotation. The ultimate cost frequently is more than the amount estimated.

For certain well-defined services (for example, a simple business incorporation), we may quote you a flat fee. It is our policy not to accept representation on a flat-fee basis except in such defined-service areas or pursuant to a special arrangement tailored to the needs of particular client. In all such situations, the flat fee arrangement will be expressed in a letter, setting forth both the amount of the fee and the scope of the services to be provided.

## ADDITIONAL CHARGES

Typically, we will charge clients not only for legal services rendered, but also for other ancillary services provided. Examples include charges for long-distance telephone calls, overnight courier or mail service, messenger deliveries, computerized research services, and the use of our facsimile and photocopy machines. Where possible, our charges for these services are measured by our actual out-of-pocket costs. For many of these items, however, the true cost of providing the service is difficult to establish and we are constantly striving to maintain these charges at rates which are lower than those maintained by others in our markets. We would be pleased to discuss the specific schedule of charges for these additional services with you and to answer any questions that you may have. If you would prefer, in some situations we can arrange for these ancillary services to be provided by third-parties with direct billing to you, always with the understanding that third-party services are your responsibility to pay. In most instances we will forward an invoice of a third-party directly to you for payment.

## RETAINER AND TRUST DEPOSITS

New clients of the Firm are commonly asked to deposit a retainer with the Firm. If you deposit a retainer with us, you grant us a security interest in that deposit. Unless otherwise agreed, the retainer deposit will be credited toward your unpaid invoices, if any, at the conclusion of services. At the conclusion of our legal representation or at such time as the deposit is unnecessary or is appropriately reduced, the remaining balance or an appropriate part of it will be returned to you. If the retainer deposit proves insufficient in view of the services to be rendered during the engagement, it may have to be increased.

Deposits which are received to cover specific items will be disbursed as provided in our agreement with you, and you will be notified from time to time of the amounts applied or withdrawn. Any amount remaining after disbursement will be returned to you.

All trust deposits we receive from you, including retainers, will be placed in a trust account for your benefit. By court rule in each jurisdiction in which the firm has an office, your deposit will be placed in a pooled account if it is not expected to earn a net return, taking into consideration the size and anticipated duration of the deposit and the transaction costs. Other trust deposits will also be placed in the pooled account unless you request a segregated account. By court rule in each of these jurisdictions, interest earned on the pooled account is payable to a charitable foundation established in accordance with such court rule. Interest earned on the segregated trust account will be added to the deposit for your benefit and will be includable in your taxable income.

## YOUR RESPONSIBILITIES

In addition to payment of our fees, as described above, you agree to cooperate with us in the matters we are handling for you and to provide all information known or available to you relevant to our representation.

## TERMINATION

You may terminate our representation at any time, with or without cause, by notifying us. Your termination of our services will not affect your responsibility for payment of legal services rendered and additional charges incurred before termination and in connection with an orderly transition of the matter.

We are subject to the rules of professional responsibility for the jurisdictions in which we practice, which list several types of conduct or circumstances that require or allow us to withdraw from representing a client, including for example: nonpayment of fees or costs, misrepresentation or failure to disclose material facts, action contrary to our advice, and conflict of interest with another client. We try to identify in advance and discuss with our client any situation which may lead to our withdrawal and, if withdrawal ever becomes necessary, we give the client written notice of our withdrawal.

At your written request, your papers and property will be returned to you promptly upon receipt of payment for outstanding fees and costs. Our own files pertaining to the matter will be retained by the Firm. These Firm files include, for example, Firm administrative records, time and expense reports, personnel and staffing materials, credit and accounting records, and internal lawyers' work product such as drafts, notes, internal memoranda, and legal and factual research, including investigative reports, prepared by or for the internal use of lawyers. All such documents retained by the Firm will be transferred to the person responsible for administering our records retention program. For various reasons, including the minimization of unnecessary storage expenses, we reserve the right to destroy or otherwise dispose of any such documents or other materials retained by use within a reasonable time after the termination of the engagement.

## BILLING ARRANGEMENTS AND TERMS OF PAYMENT

We will bill you on a regular basis, normally each month, for both fees and disbursements. You agree to make payments within 30 days of receiving our statement. We will give you prompt notice if your account becomes delinquent, and you agree to bring the account or the retainer deposit current. If the delinquency continues and you do not arrange satisfactory payment terms, we will withdraw from the representation and pursue collection of your account. You agree to pay the costs of collecting the debt, including court costs, filing fees and a reasonable lawyer's fee.

**YOUR RIGHT TO ARBITRATE**

If you disagree with the amount of our fee, please take up the question with your principal lawyer contact or with the Firm's Managing Partner. Typically, such disagreements are resolved to the satisfaction of both sides with little inconvenience or formality. In the event of a fee dispute which is not readily resolved, you have the right to request arbitration under supervision of the state or district bar associations for most of the jurisdictions in which we practice, and, where applicable, we agree to participate fully in that process.

\* \* \* \* \*

Your agreement to this engagement constitutes your acceptance of the foregoing terms and conditions. If any of them is unacceptable to you, please advise us now so that we can resolve any differences and proceed with a clear, complete, and consistent understanding of our relationship.

3